**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| F. FREDERIC FOUAD, | : | Civil No. 1:19-CV-00253 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Judge Jennifer P. Wilson |
| THE MILTON HERSHEY SCHOOL | : | |
| AND SCHOOL TRUST, *et al.*, | : | |
| | : | |
| Defendant, | : | Magistrate Judge Martin C. Carlson |

## MEMORANDUM

This is a civil case in which Plaintiff F. Frederic Fouad ("Fouad") brings

nine causes of action under Pennsylvania and New York law against sixteen named

defendants who are either directly or tangentially connected to the Milton Hershey

School ("MHS") for alleged improprieties in connection with three other cases that

were filed in this district.

On July 24, 2020, the court issued an order in which it noted that there were

possible defects in the court's subject matter jurisdiction.  Because the Defendants

had originally invoked the court's jurisdiction by removing the case from state

court, the court ordered Defendants to show cause as to why the case should not be

remanded to state court for lack of subject matter jurisdiction.  The parties then

briefed the subject matter jurisdiction issue in accordance with the court's order.

Having reviewed the parties' submissions, the court concludes that it lacks subject

matter jurisdiction.  Accordingly, for the reasons that follow, this case is remanded to the New York County Supreme Court in New York, New York.

**BACKGROUND AND PROCEDURAL HISTORY**

This case was first filed in New York state court on June 18, 2018 through a summons with notice.[1]  (Doc. 1 at 1.)  The summons with notice stated that the case arose from "Defendants' collective and individual concerted tortious and malicious actions against Plaintiff."  (Doc. 1-1 at 3.)  Fouad asserted causes of action for "prima facie tort, abuse of subpoena, abuse of process, intentional infliction of emotional harm, breach of the covenant of good faith and fair dealing, interference with contractual relations, violation of due process, and breach of fiduciary duty."  (*Id.*)

Three days after the case was filed, Defendants Elliott Greenleaf, P.C. and Jarad W. Handelman (collectively referred to as the "EG Defendants") removed the case to the United States District Court for the Southern District of New York.  (Doc. 1.)  The other Defendants consented to the removal on July 12, 2018.  (Doc. 18.)

---

[1] Under New York law, a plaintiff may initiate civil litigation through the filing of a summons with a notice stating the nature of the action, the relief sought, and the sum of money for which judgment may be taken in case of default.  *See* N.Y. C.P.L.R. 305 (MCKINNEY 2020).

Fouad filed his complaint on September 17, 2018.  (Doc. 45.)  The complaint alleged generally that Defendants had engaged in a conspiracy to use civil lawsuits to manufacture false information and that the false information was then used in a smear campaign against Fouad.  (*Id.*)  The complaint raised causes of action for prima facie tort, abuse of process, breach of the covenant of good faith and fair dealing, outrageous conduct causing emotional distress, civil conspiracy, and breach of fiduciary duty.  (*Id.* ¶¶ 446–96.)  Fouad's claims were based on the alleged misuse of subpoenas and other process in three federal lawsuits that had been filed in this district: *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, No. 1:16-CV-02145 (M.D. Pa. filed June 29, 2016); *Dobson v. Milton Hershey Sch. & Sch. Tr.*, No. 1:16-CV-01958 (M.D. Pa. filed June 30, 2016); and *Buchan v. Milton Hershey Sch.*, 1:16-CV-02557 (M.D. Pa. filed December 28, 2016).  (*See* Doc. 45 ¶ 253.)

On February 6, 2019, the Southern District of New York denied Fouad's motion to remand the case to state court and granted Defendants' motion to transfer the case to this district.  (Doc. 82.)  The court found that it had subject matter jurisdiction over the case because the case required the court to assess "subpoenas and discovery orders issued by federal courts in ongoing actions" and therefore required "determination of the meaning and application of federal law and related rules."  (*Id.* at 3.)  The court did not directly address the issue of

3

diversity jurisdiction because of the presence of federal question jurisdiction, but speculated in dicta that diversity jurisdiction was likely present because the allegations against Defendant David Saltzman ("Saltzman") "likely do not state a claim, suggesting that Saltzman was fraudulently joined." (*Id.*) Having concluded that jurisdiction was present, the court transferred the case to this district under 28 U.S.C. § 1404. (*Id.* at 3–6.)

On August 13, 2019, United States District Judge John E. Jones, III granted Fouad's motion for leave to file an amended complaint, and Fouad's amended complaint was filed one week later. (Docs. 170–71.) The amended complaint named sixteen defendants and raised causes of action for defamation, false light, abuse of subpoena, abuse of process, intentional interference with a contract, outrageous intentional conduct causing severe emotional distress, civil conspiracy, prima facie tort, and for declaratory judgment regarding Pennsylvania's Dragonetti Act. (Doc. 171 ¶¶ 236–343.)

The EG Defendants moved to dismiss the amended complaint on September 3, 2019. (Doc. 173.) Defendants Saltzman, MHS, the Hershey Trust Company, Peter Gurt, Ralph Carfagno, Robert Heist, Velma Redmond, James C. Katzman, James W. Brown, M. Diane Koken, James M. Mead, Melissa L. Peoples-Fullmore, Jan Loeffler Bergen, and Andrew H. Cline (collectively referred to as the "MHS Defendants") also moved to dismiss on the same day. (Doc. 174.) The case was

reassigned to the undersigned pursuant to a verbal order on November 18, 2019.

Defendant Navada Hatfield ("Hatfield") then moved to dismiss the amended

complaint on November 26, 2019.  (Doc. 229.)

On that same day, the court referred the case to Chief United States

Magistrate Judge Susan E. Schwab for the purposes of assigning a pending motion

to compel discovery to a United States Magistrate Judge.  (Doc. 230.)  The motion

was assigned to Judge Carlson the following day.  (Doc. 231.)  The court then

referred the case to Judge Carlson for resolution of all discovery issues on

December 3, 2019, and later expanded this referral to include all pretrial

management.  (Docs. 238, 282.)

On February 19, 2020, Judge Carlson issued a report and recommendation

addressing the three pending motions to dismiss.  (Doc. 326.)  Since that time,

Fouad has filed five appeals of non-dispositive orders issued by Judge Carlson.

(Docs. 332, 343, 354, 362, 442.)  One of those appeals was denied as moot, but the

other four (Docs. 343, 354, 362, 442) remain pending.  Fouad has also filed a

motion for leave to file a supplementary brief in connection with the report and

recommendation.  (Doc. 414.)

On July 24, 2020, this court identified possible defects in the court's subject

matter jurisdiction and ordered Defendants to show cause as to why the case

should not be remanded to New York state court.  (Doc. 474.)  All three groups of

5

Defendants filed briefs arguing that the court should retain jurisdiction on August

7, 2020.  (Docs. 479–81.)  Fouad filed three opposition briefs on August 21, 2020,

in which he argued that the court should remand the case, and the Defendants then

filed reply briefs on September 4, 2020.  (Docs. 482–87.)  Fouad has since filed a

motion for leave to file a sur reply in response to the EG Defendants' reply brief.

(Doc. 488.)

## STANDARD OF REVIEW

District courts are continually obligated to review whether they have subject

matter jurisdiction and must raise subject matter jurisdiction issues sua sponte.

*Fort Bend Cty., Tex. v. Davis*, 587 U.S. __, 139 S. Ct. 1843, 1849 (2019).  A

district court may only exercise subject matter jurisdiction over a case that is

removed from state court if the court has original jurisdiction over the case.  28

U.S.C. § 1441.  "If at any time before final judgment it appears that the district

court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. §

1447.

Original subject matter jurisdiction must be based on either federal question

jurisdiction or diversity jurisdiction.  *See* 28 U.S.C. §§ 1331–32.  A district court

has federal question jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Under the

well-pleaded complaint rule, a case only arises under federal law "when the

6

plaintiff's statement of his own cause of action shows that it is based upon federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Lousville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).  A court has diversity jurisdiction under 28 U.S.C. § 1332 when the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.

The question of whether a court has jurisdiction over a removed case is analyzed based on the state of the case at the time of removal.  *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 540 (1939)).  All parties in this case agree that subject matter jurisdiction should be analyzed based on the state of the case at the time of removal.  (*See* Doc. 479 at 8–10; Doc. 480 at 4; Doc. 481 at 14; Doc. 484 at 8.)  A summons with notice filed under New York law is an initial pleading for purposes of the federal removal statute.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001).  Thus, the court's analysis here focuses on whether federal subject matter jurisdiction was established based on Fouad's summons with notice, because that was the only pleading Fouad had filed at the time of removal.

Nevertheless, in the interests of justice and completeness, the court has also considered whether Fouad's amended complaint presents any basis for the court to exercise subject matter jurisdiction.  The amended complaint contains two changes from the summons with notice that are potentially relevant to the court's

jurisdictional analysis. First, Fouad no longer alleges any violation of his due process rights. (*See generally* Doc. 171.) Second, Fouad raises a claim for federal declaratory relief related to Pennsylvania's Dragonetti Act. (*See id.* ¶¶ 311–43.) Both the due process and declaratory judgment claims are analyzed below as potential bases for the exercise of subject matter jurisdiction.

DISCUSSION

In their briefs in response to the order to show cause, Defendants raise six arguments as to why this case should not be remanded for lack of subject matter jurisdiction. First, Defendants argue that the Southern District of New York's jurisdictional determination constitutes law of the case that the court is bound to follow. (*See* Doc. 479 at 9–23; Doc. 480 at 6–8; Doc. 481 at 24.) Second, Defendants argue that the court has federal question jurisdiction because Fouad's state law claims involve construction of federal law. (*See* Doc. 479 at 19–21; Doc. 480 at 5–6; Doc. 481 at 18–20.) Third, Defendants argue that the court has federal question jurisdiction because Fouad stated a due process claim in his summons with notice. (Doc. 479 at 21–22; Doc. 480 at 5–6; Doc. 481 at 17–18.) Fourth, Defendants argue that the court has diversity jurisdiction because the only non-diverse defendant, Saltzman, was fraudulently joined. (Doc. 479 at 23; Doc. 480 at 4–5; Doc. 481 at 16–17, 20–23.) Fifth, Defendants argue that the court has federal question jurisdiction because Fouad raises a claim for relief under the federal

8

Declaratory Judgment Act.  (Doc. 479 at 25–26.)  Finally, Defendants argue that

the court should exercise jurisdiction based on considerations of judicial economy,

convenience, and fairness to the parties.  (Doc. 479 at 26; Doc. 480 at 8–9.)  None

of these arguments succeed.

### A. The Southern District of New York's Subject Matter Jurisdiction Decision Does Not Bar This Court from Reconsidering the Issue of Subject Matter Jurisdiction

The court will first consider whether it is barred from reconsidering the issue

of subject matter jurisdiction under the law of the case doctrine, which "generally

provides that 'when a court decides upon a rule of law, that decision should

continue to govern the same issues in subsequent stages in the same case.'"

*SEPTA v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 72 n.24 (M.D. Pa. 2020)

(quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  Defendants argue that

the law of the case doctrine applies here because the Southern District of New

York previously found that subject matter jurisdiction was present.  (Doc. 479 at

9–23; Doc. 480 at 6–8; Doc. 481 at 24.)  This argument is incorrect under the clear

language of 28 U.S.C. § 1447 and the Supreme Court's decision in *Christianson v.

Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).

To begin, 28 U.S.C. § 1447 requires a district court to remand a case "[i]f at

any time before final judgment it appears that the district court lacks subject matter

jurisdiction."  28 U.S.C. § 1447.  This clear statutory directive cannot be overcome

by the judicially created law of the case doctrine because federal subject matter jurisdiction cannot be "expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951)).

The Supreme Court's decision in *Christianson* similarly supports the conclusion that the law of the case doctrine does not bar the court from reconsidering the issue of subject matter jurisdiction. *Christianson*, 486 U.S. at 800. In *Christianson*, the defendant appealed an adverse ruling from the United States District Court for the Central District of Illinois to the United States Court of Appeals for the Federal Circuit, asserting that the Federal Circuit had jurisdiction over the matter because the case arose under a federal patent statute. *Id.* at 806. The Federal Circuit concluded that it lacked jurisdiction and transferred the case to the United States Court of Appeals for the Seventh Circuit. *Id.* The Seventh Circuit then re-raised the issue of subject matter jurisdiction sua sponte, concluded that the Federal Circuit was "clearly wrong," and transferred the case back to the Federal Circuit. *Id.* The Federal Circuit in turn concluded that the Seventh Circuit's jurisdictional decision was "clearly wrong," but nonetheless proceeded to the merits of the case in the "interest of justice." *Id.* at 807.

On appeal to the Supreme Court, the defendants argued that the Federal Circuit was correct to reach the merits of the case because the Seventh Circuit's

decision on subject matter jurisdiction constituted law of the case. *Id.* at 815. The Court rejected this argument because, among other reasons, the law of the case doctrine did not bar a court from revisiting a prior jurisdictional ruling of a coordinate court. *Id.* at 817. As the Court held, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* "Thus," the Court continued, "even if the Seventh Circuit's decision was law of the case, the Federal Circuit did not exceed its power in revisiting the jurisdictional issue, and once it concluded that the prior decision was 'clearly wrong' it was obliged to decline jurisdiction." *Id.* at 817.

*Christianson* therefore stands for the proposition that the law of the case doctrine does not bar a federal court from reconsidering a coordinate court's subject matter jurisdiction determination. Moreover, if the coordinate court's determination of subject matter jurisdiction was clearly erroneous, the court is not only permitted to reconsider that decision, it is "obliged" to do so. *Id.*; *see also Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 292 (3d Cir. 2007) ("[L]aw of the case cannot confer subject matter jurisdiction." (citing *Green v. Dep't of Commerce*, 618 F.2d 836, 839 n.9 (D.C. Cir. 1980))).

11

Defendants' arguments to the contrary are unavailing.  Defendants rely on a line of cases holding that a transferee court should only revisit a transferor court's decision to transfer a case in extraordinary circumstances.  (*See, e.g.*, Doc. 479 at 16 (first citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169–70 (3d Cir. 1982); then citing *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 111 (3d Cir. 2009)).)  The leading case in this line is, once again, *Christianson*, where the Court held that the policies supporting the law of the case doctrine "apply with even greater force to transfer decisions than to decisions of substantive law" because "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation."  *Christianson*, 486 U.S. at 816 (citing *Hayman*, 669 F.2d at 169).

Defendants' reliance on this line of cases is misplaced because it conflates a transferor court's transfer decision with its decision on subject matter jurisdiction. As the Court explained in *Christianson*, a court should be particularly reluctant to reconsider a coordinate court's prior transfer decision, but a court is "obliged to decline jurisdiction" when the coordinate court has reached an incorrect decision on subject matter jurisdiction.  486 U.S. at 816–17.

Furthermore, even if the law of the case doctrine could be applied to subject matter jurisdiction determinations, the court could still revisit the Southern District of New York's determination.  The law of the case doctrine "expresses the practice

12

of courts generally to refuse to reopen what has been decided, but it does not limit courts' power." *Musacchio v. United States*, 577 U.S. __, 136 S. Ct. 709, 716 (2016) (internal alterations and quotation marks omitted) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). Thus, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in *any circumstance*." *Christianson*, 486 U.S. at 817 (emphasis added). The court accordingly concludes that the law of the case doctrine does not bar the court from reconsidering the issue of subject matter jurisdiction.

### B. Fouad's Claims Do Not Arise Under Federal Law

Having concluded that the law of the case doctrine does not preclude the court from revisiting the issue of subject matter jurisdiction, the court turns its attention to the merits of the jurisdictional issue. The court will first analyze Defendants' argument that the court has federal question jurisdiction under 28 U.S.C. § 1331 because Fouad's claims involve construction of federal law. (*See* Doc. 479 at 19–21; Doc. 480 at 5–6; Doc. 481 at 18–20.)

To begin, it is not clear from the face of Fouad's summons with notice that the court has federal question jurisdiction.[2] Although Fouad's abuse of process claim arises from the alleged abuse of process in several federal lawsuits, this does

---

[2] The court disregards the due process claim for purposes of the present discussion. That claim is discussed in more detail below.

not confer federal question jurisdiction.  The tort of abuse of process arises under

state law; the fact that the process that was allegedly abused was federal in nature

does not transform the state tort into a federal claim.  *See Wheeldin v. Wheeler*, 373

U.S. 647, 651–52 (1963) (holding that federal court did not have jurisdiction over

abuse of process claim arising from alleged misuse of a congressional subpoena

because abuse of process was a state claim and federal courts did not have the

power to create a federal common law claim for abuse of process despite the

federal nature of the subpoena); *Eastern Indus., Inc. v. Joseph Ciccone & Sons,*

*Inc.*, 532 F. Supp. 726, 728 (E.D. Pa. 1982) (holding that court did not have

jurisdiction over abuse of process claim alleging improper conduct in a federal suit

because there is no federal common law claim for abuse of process (citing

*Wheeldin*, 373 U.S. at 652)).

        Nevertheless, the court may still have jurisdiction if Fouad's state law claims

fall into the limited category of state law claims that arise under federal law.  This

analysis requires a brief background on federal arising under jurisdiction.

        The scope of federal arising under jurisdiction was, for a long time,

governed by the Supreme Court's holdings in *American Well Works Co. v. Layne*

*& Bowler Co.*, 241 U.S. 257 (1916), and *Smith v. Kansas City Title & Trust Co.*,

255 U.S. 180 (1921).  In *American Well Works*, the plaintiff owned a patent for a

pump, and the defendant made public statements that the plaintiff's pump infringed

on defendant's own design for a pump, causing plaintiff to bring state tort causes of action against the defendant for libel and slander. *American Well Works*, 241 U.S. at 258. The lower court found that it had jurisdiction over the case based on the involvement of federal patent law, but the Supreme Court reversed, noting that whether the defendant's action was wrong depended on "the law of the state where the act [was] done, not upon the patent law, and therefore the suit [arose] under the law of the state." *Id.* at 260. The Court accordingly held that "[a] suit arises under the law that creates the cause of action." *Id.*

Although *American Well Works* seemed to place a particularly restrictive limit on the reaches of federal arising under jurisdiction, courts over time interpreted the rule as being "more useful for inclusion than for the exclusion for which it was intended." RICHARD H. FALLON, JR., ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 817 (7th ed. 2015) [hereinafter HART AND WECHSLER] (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964)). That is, if a plaintiff's claim pleads a federal cause of action, a federal court almost always has subject matter jurisdiction over the case "[w]ith only the most uncertain and limited exceptions." *Id.*

The Court announced a broader rule of federal arising under jurisdiction in *Smith*, which arose from a claim brought by a shareholder of a corporation to enjoin the corporation from investing funds it had obtained through a federal loan

under the Federal Farm Loan Act of 1916. *Smith*, 255 U.S. at 195. The

shareholder's suit alleged that Congress did not have the power to issue the loan

and sought to enjoin the corporation from investing funds from the loan on that

basis. *Id.* at 195–96. In considering whether federal courts could exercise

jurisdiction over the case, the Court stated a "general rule" for federal arising under

jurisdiction:

> where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision.

*Id.* at 199. Applying that standard to the facts before it, the Court held that the

lower court had jurisdiction to hear the case because it was "apparent that the

controversy concern[ed] the constitutional validity of an act of Congress" and the

disposition of the case "depend[ed] upon the determination of [that] issue." *Id.* at

201.

The Court applied the standards from *American Well Works* and *Smith* in

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), which arose

from negligence claims brought against a pharmaceutical company. The plaintiffs

alleged that the defendant had misbranded one of its products in violation of the

federal Food, Drug and Cosmetic Act and that this misbranding created a

"rebuttable presumption of negligence." *Id.* at 806. The defendant removed the

16

case to federal court, arguing that the negligence claim arose under federal law because it required construction of the Food, Drug and Cosmetic Act. *Id.* Plaintiffs subsequently moved to remand the case to state court, the district court denied the motion to remand, and the Sixth Circuit reversed. *Id.* at 806–07. On appeal, the Supreme Court reaffirmed the longstanding principle "that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813. The Court then held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 817 (quoting 28 U.S.C. § 1331).

*Merrell Dow* remained the leading case on federal arising under jurisdiction until the Court issued its decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), which considered the question of whether *Merrell Dow* "always requires a federal cause of action as a condition for exercising federal-question jurisdiction." *Id.* at 311–12.

*Grable* arose from a state quiet-title action. *Id.* at 310. The Internal Revenue Service ("IRS") had seized real property from the plaintiff to satisfy a federal tax delinquency and subsequently sold the property through a tax sale. *Id.* Five years after the tax sale occurred, the plaintiff brought suit against the buyer of

the property seeking to quiet the buyer's title. *Id.* The plaintiff alleged that the sale was legally invalid because the IRS had not given him notice that complied with the dictates of 26 U.S.C. § 6335. *Id.* at 311.

On appeal, the Supreme Court reaffirmed that *Smith* was the "classic example" of federal arising under jurisdiction, though the Court acknowledged that *Smith* provided "a somewhat generous statement of the scope of the doctrine." *Id.* at 312–13. The Court acknowledged that *Merrell Dow* contained some language that was contrary to *Smith*, but found that *Merrell Dow*, when "read as a whole," could not be understood "as overturning decades of precedent" by "converting a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Id.* at 317.

Thus, analyzing *Smith*, *Merrell Dow*, and the other Supreme Court cases defining the parameters of federal arising under jurisdiction, the *Grable* Court stated that the test for arising under jurisdiction is whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

Supreme Court cases since *Grable* have reaffirmed that it is the leading case on federal arising under jurisdiction, but have limited its scope. HART AND WECHSLER 834. In *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677

18

(2006), the Court emphasized that the category of cases fitting under *Grable's* definition of federal arising under jurisdiction is "special and small." *Id.* at 699. According to *McVeigh*, *Grable* requires "more than a federal element 'to open the arising under door.'" *Id.* at 701 (citing *Grable*, 545 U.S. at 313).

In *Gunn v. Minton*, 568 U.S. 251 (2013), the Court restated the *Grable* standard as a four-part test, holding that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258. The Court noted that merely because resolution of a federal question is "necessary" to disposition of a case, it does not follow that a federal court has jurisdiction over the case if the other elements under *Grable* are not met. *Id.* at 259. The Court also clarified that for a federal issue to be substantial under *Grable*, "it is not enough that the federal issue be significant to the particular parties in the immediate suit" because "[t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id.* at 260.

It was on the basis of federal arising under jurisdiction that the Southern District of New York concluded that federal question jurisdiction was present in this case. (Doc. 82 at 3.) The court reasoned that the abuse of process claim confers federal question jurisdiction because it requires the court to assess

"subpoenas and discovery orders issued by federal courts in ongoing actions" and therefore requires "determination of the meaning and application of federal law and related rules." (*Id.*) The court based its decision on three decisions of the Southern District of New York—*Martin-Trigona v. Brooks & Holtzman*, 551 F. Supp. 1378 (S.D.N.Y. 1982), *Hodges v. Demchuk*, 866 F. Supp. 730 (S.D.N.Y. 1994), and *Berisic v. Winckelman*, No. 03-CV-01810, 2003 WL 21714930 (S.D.N.Y. 2003)—that were decided before the Supreme Court's decision in *Grable* clarified the standards a court must apply in deciding a federal arising under jurisdiction issue. (Doc. 82 at 3.) The court accordingly did not state whether a federal issue was necessarily raised, actually disputed, substantial, or capable of resolution by a federal court without disrupting the federal-state balance. (*See id.*)

Returning to the present analysis, and applying the standards set forth in *Grable* and *Gunn*, the court finds that the court does not have federal arising under jurisdiction. First, it is not clear from the face of Fouad's summons with notice that a federal issue is necessarily raised in the litigation. Although Defendants argue that resolution of Fouad's abuse of process claim requires "interpretation and analysis of Federal Rules of Civil Procedure 26 and 45," it is not clear, based on

the elements of abuse of process under New York or Pennsylvania law,[3] that this is true.  To establish a claim for abuse of process under New York law, a plaintiff must establish that (1) there was "regularly issued process, civil or criminal, compelling the performance or forebearance of some prescribed act"; (2) "the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification"; and (3) "defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process."  *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom*, 343 N.E.2d 278 (N.Y. 1975).  Similarly, to establish abuse of process under Pennsylvania law, a plaintiff must establish that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. 1993).  Thus, it is the traditional tort principles of the existence of process, the defendant's motives, and the wrongfulness of the defendant's actions that determine whether a defendant has

---

[3] Because the parties have engaged in various disputes in this litigation over choice of law issues, the court provides the elements of abuse of process under both New York and Pennsylvania law, since all parties agree that the state claims at issue are governed by either New York law or Pennsylvania law.

abused process, none of which would necessarily require analysis of the Federal Rules of Civil Procedure or any other federal law.

Second, it is not clear that any issue of federal law is actually in dispute between the parties. Judge Carlson's thorough and well-reasoned report and recommendation is instructive. (*See generally* Doc. 326.) Although the report and recommendation illustrates that the parties have various and sundry disputes over the merits of Fouad's state law claims, it is not clear that the parties disagree on the construction or application of any issue of *federal* law. (*See id.*)

Third, the federal issues in this case—to the extent that there are any federal issues at all—are not substantial to the federal system as a whole. The facts of this case are notably similar to those in *Gunn*, where a plaintiff sued a lawyer for malpractice based on the lawyer's alleged misconduct during a federal lawsuit. *Gunn*, 568 U.S. at 261. In that case, the Court held that the "backward-looking nature of a legal malpractice claim" did not implicate substantial issues of federal law because any decision on the issue of malpractice would not change the results of the federal litigation that had already occurred; the only issue that would be decided was whether the defendant had committed a tort under state law. *Id.* at 261–62. Similarly here, Fouad's claims are based on alleged misconduct during federal litigation, but any decision as to whether Defendants committed a tort in litigating *Wartluft*, *Dobson*, or *Buchan* would not alter the decisions of federal law

22

that had already been made in those cases. Fouad's claims, like those in *Gunn*, are therefore "backward-looking" and would not have a substantial impact on federal law. *Gunn*, 568 U.S. at 261.

Finally, just as in *Gunn*, it follows from the fact that there is no substantial issue of federal law in this case that the fourth element under *Grable* and *Gunn* is not met. *See id.* at 264. Accordingly, since none of the four elements necessary for federal arising under jurisdiction are met, the court concludes that Fouad's claims do not fall into the "special and small" category of state law claims that arise under federal law. *McVeigh*, 547 U.S. at 699.

Defendants raise several arguments to the contrary, none of which alter the court's conclusion. First, Defendants argue that this case is analogous to two past cases from the Southern District of New York—*Martin-Trigona* and *Hodges*—where the court held that a state law abuse of process claim arose under federal law. (*See* Doc. 479 at 19.) This argument is rejected because, as noted above, those cases were all decided before the Supreme Court's decision in *Grable*, and thus applied a different definition of federal arising under jurisdiction than the one that the court must apply currently.

Second, the EG Defendants argue that the court must retain jurisdiction under the District of New Jersey's decision in *Thomason v. Lehrer*, 183 F.R.D. 161, 163 (D.N.J. 1998), which held that "an attorney who seeks to assert an abuse

of process claim against an attorney-adversary based upon conduct which occurred in a case pending before a United States District Court, must seek redress in the District Court, and not in state court." *Id.* This argument is completely without merit because the relevant holding in *Thomason* was expressly overruled by the Third Circuit's decision in *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 393–94 & n.6 (3d Cir. 2002) (overruling *Thomason's* holding that "federal court [was] exclusive forum to seek redress for litigation abuses committed in a federal suit" and holding that abuse of process claim against defendant attorney could be brought in state court).

Third and finally, Defendants argue that the court has federal arising under jurisdiction because Fouad's abuse of process claim would fail if Defendants had a "legitimate evidentiary purpose" for issuing the relevant process. (Doc. 479 at 21.) Under the well-pleaded complaint rule, however, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction," because the exercise of federal question jurisdiction must be based on the allegations of the plaintiff's well-pleaded complaint. *Merrell Dow*, 478 U.S. at 808 (quoting *Mottley*, 211 U.S. at 149). This argument accordingly fails because it is based only on a possible defense to Fouad's claim. Thus, the court concludes that Fouad's abuse of process claim does not arise under federal law and does not provide a basis for this court to exercise subject matter jurisdiction.

24

## C. Fouad's Due Process Claim Is Not Sufficient to Confer Federal Question Jurisdiction

The court turns next to the issue of whether Fouad's due process claim confers subject matter jurisdiction on the court.  Defendants argue that the inclusion of a due process claim in the summons with notice is sufficient to confer subject matter jurisdiction because such a claim would arise under federal law. (Doc. 479 at 21–22; Doc. 480 at 5–6; Doc. 481 at 17–18.)  Fouad argues that this is not a sufficient basis to confer subject matter jurisdiction because the summons with notice made only a passing reference to a due process violation.  (Doc. 484 at 7–12.)

The court disagrees with Fouad's argument that the summons with notice made only a passing reference to due process.  Contrary to Fouad's argument, the summons with notice stated that it "assert[ed]" a cause of action for "violation of due process."  (Doc. 1-1 at 3.)  Nevertheless, the court finds that this due process claim is not sufficient to confer federal subject matter jurisdiction because it is not clear from the face of the summons with notice that it was raising a due process claim under *federal* law.

Under the well-pleaded complaint rule, a case only arises under federal law "when the plaintiff's statement of his own cause of action shows that it is based upon federal law."  *Vaden*, 556 U.S. at 60 (quoting *Mottley*, 211 U.S. at 152).

25

Here, as Fouad notes, *see* Doc. 484 at 8, the summons with notice did not cite any provision of the United States Constitution, it did not cite 42 U.S.C. § 1983, and it did not cite any other source to indicate that it was raising a federal due process claim rather than a state due process claim.  (*See* Doc. 1-1.)  Although the general allegation of "violation of due process" may reasonably be read as raising a federal claim, it could just as easily be interpreted as raising a state law claim, since the constitutions of both New York and Pennsylvania include due process clauses of their own.  *See* N.Y. Const. art. I, § 6; Pa. Const. art I, § 1.  Thus, since the federal removal statute must be strictly construed in favor of remand and all doubts must be resolved in favor of remand, *Abels*, 770 F.2d at 29, the court finds that Fouad's due process claim does not confer subject matter jurisdiction.[4]

### D. The Court Does Not Have Diversity Jurisdiction

A district court has diversity jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Diversity between the parties must be complete, which means that, "unless there is some other basis for jurisdiction, 'no plaintiff may be a citizen of the same state as any defendant.'"  *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d

---

[4] As noted above, Fouad no longer raises a due process claim in his amended complaint.  (*See generally* Doc. 171.)

Cir. 2015) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

Here, complete diversity between the parties is facially lacking because both Fouad and Defendant Saltzman are citizens of New York.  (*See* Doc. 1-1 at 2, 4.) Nevertheless, Defendants argue that the court may exercise diversity jurisdiction under the fraudulent joinder doctrine.  (Doc. 479 at 23; Doc. 480 at 4–5; Doc. 481 at 16–17, 20–23.)

The fraudulent joinder doctrine "represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006) (citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)).  Under the doctrine, a case may be removed to federal court despite the presence of non-diverse defendants if those defendants were fraudulently joined in the action—that is, "named or joined solely to defeat diversity jurisdiction." *Id.* at 216.

Joinder of a non-diverse defendant is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* (quoting *Abels*, 770 F.2d at 32).

A party alleging that a defendant has been fraudulently joined bears a "heavy burden of persuasion" to establish fraudulent joinder.  *Boyer v. Snap-On*

*Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union*

*Switch & Signal Div. Am. Standard, Inc.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)).

In determining whether a defendant has been fraudulently joined, the court "must

resolve all contested issues of substantive fact in favor of the plaintiff and must

resolve any uncertainties as to the current state of controlling substantive law in

favor of the plaintiff." *Id.* (citing *B., Inc. v. Miller Brewing Co.*, 663 F.3d 545, 549

(5th Cir. 1981)).  In addition, the court must strictly construe the federal removal

statute against removal, and all doubts must be resolved in favor of remand.  *Abels*,

770 F.2d at 29.

A plaintiff's failure to state a claim upon which relief may be granted against

a defendant does not establish that the defendant was fraudulently joined.  *Hogan*

*v. Raymond Corp.*, 536 F. App'x 207, 210 (3d Cir. 2013) (citing *Batoff v. State*

*Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).  "If there is even a possibility

that a state court would find that the complaint states a cause of action against any

one of the resident defendants, the federal court must find that joinder was proper

and remand the case to state court." *Briscoe*, 448 F.3d at 217 (quoting *Batoff*, 977

F.2d at 851–52).

Here, the court finds that Defendants have not established fraudulent joinder.

Once again, the court finds Judge Carlson's report and recommendation

persuasive.  Although the report and recommendation did not address the

fraudulent joinder doctrine directly, it did address the sufficiency of Fouad's claims against Defendant Saltzman and other members of MHS's board of directors. (*See* Doc. 326 at 90–92.) The report and recommendation concluded that all individual-capacity claims against Saltzman and several other board members should be dismissed "without prejudice to Fouad endeavoring to articulate well-pleaded facts relating to these individuals sufficient to establish individual director liability under Pennsylvania law." (*Id.* at 92.)

Judge Carlson's recommendation that the claims against Saltzman be dismissed without prejudice indicates a possibility that Fouad could state a claim against Saltzman in an amended complaint. And the court is compelled to reject the fraudulent joinder argument "[i]f there is *even a possibility* that a state court would find that the complaint states a cause of action" against Saltzman. *Briscoe*, 448 F.3d at 217 (emphasis added) (quoting *Batoff*, 977 F.2d at 851–52).

The court agrees with Judge Carlson that Fouad could potentially state a claim against Saltzman because Pennsylvania law allows corporate and non-profit directors to be held individually liable in certain circumstances.[5] *See, e.g.*, *In re*

---

[5] In making this determination, the court emphasizes that it is not making any decision on the merits of Fouad's claims. The court's analysis is limited to the question of whether Defendant Saltzman was fraudulently joined; the ultimate determination of the merits of Fouad's claims shall be left to the state court on remand. *See, e.g.*, *Abels*, 770 F.2d at 32–33 ("[E]nough recent authority supporting such a cause of action exists to constrain us from holding that there is no 'colorable' legal basis for the John Doe claims. To inquire any further into the legal merits would be inappropriate in this preliminary jurisdictional determination."); *see also Briscoe*, 448

*Lemington Home for the Aged*, 659 F.3d 282, 292 n.5 (3d Cir. 2011).  The

fraudulent joinder doctrine therefore does not apply and this court accordingly does

not have diversity jurisdiction.[6]

### E. Fouad's Declaratory Judgment Claim Is Not Sufficient to Confer Federal Question Jurisdiction

The court will next address Defendants' argument that the court has federal

question jurisdiction because Fouad seeks a declaratory judgment that the

Dragonetti Act would be unconstitutional as applied to him.  (Doc. 479 at 25–26.)[7]

Defendants' argument does not withstand judicial scrutiny.

The Dragonetti Act is a Pennsylvania statute that allows a civil cause of

action for "wrongful use of civil proceedings."  42 Pa.C.S. § 8351.  In this case,

Fouad's amended complaint represents that the Defendants have threatened him

with liability under the Dragonetti Act.  (Doc. 171 ¶ 223.)  Based on this alleged

threat, Fouad's declaratory judgment claim seeks a declaration that the Dragonetti

---

F.3d at 219 (noting that a district court conducting a fraudulent joinder analysis "must not step 'from the threshold jurisdictional issue into a decision on the merits.'" (quoting *Batoff*, 977 F.2d at 852)).

[6] The Southern District of New York speculated in dicta that diversity jurisdiction was present because Fouad's claims against Saltzman "likely do not state a claim, suggesting that Saltzman was fraudulently joined."  (Doc. 82 at 3.)  But that is not the correct standard.  *See Hogan*, 536 F. App'x 207 at 210 (holding that a plaintiff's failure to state a claim upon which relief may be granted against a defendant does not establish fraudulent joinder (citing *Batoff*, 977 F.2d at 851)).  Accordingly, the court gives no persuasive weight to this dictum.

[7] As noted above, Fouad's declaratory judgment claim was not added to this case until he filed his amended complaint.  (*See* Doc. 171.)  Nevertheless, despite the fact that the declaratory judgment claim was not included in the summons with notice, the court will analyze it as a possible basis for federal question jurisdiction in the interest of justice.

Act is unconstitutional under the United States and Pennsylvania constitutions. (*See* Doc. 171 ¶ 343.)  Under the Declaratory Judgment Act, however, a federal court only has jurisdiction to grant declaratory relief if it could exercise jurisdiction over a coercive judgment action regarding the same facts and between the same parties.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950).

Here, the court agrees with Judge Carlson's conclusion that any Dragonetti Act case between these parties is purely hypothetical because there is "no real or immediate threat for Fouad to be subject to Dragonetti Act liability."  (Doc. 326 at 79.)  As Judge Carlson notes, Fouad has not alleged which of his actions would give rise to a potential Dragonetti Act claim against him, nor has he alleged any actual or immediate initiation of Dragonetti Act proceedings against him.  (*Id.* at 80–81.)  Instead, Fouad has only alleged a speculative, conjectural, and contingent possibility of a Dragonetti Act claim at some future time.  (*Id.* at 81.)  The court accordingly does not have subject matter jurisdiction over Fouad's declaratory judgment claim because there is no coercive judgment action regarding the same facts and between the same parties on which the court could exercise jurisdiction. *Skelly Oil*, 339 U.S. at 671–74.

Moreover, even if this court had jurisdiction over Fouad's declaratory judgment claim, it would decline to exercise that jurisdiction.  A district court has "broad discretion to decline to hear actions arising under the Declaratory Judgment

Act." *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 225 (3d Cir. 2017) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).  Here, as Judge Carlson notes, Fouad's declaratory judgment claim seeks a declaration that a Pennsylvania statute is unconstitutional, but the Pennsylvania appellate courts have not yet had the opportunity to rule on that constitutional question.  (Doc. 326 at 83–84.)  The court would therefore decline jurisdiction in deference to Pennsylvania's state courts.  *See State Auto Ins. Co. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) ("[I]t is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law, questions which might otherwise be candidates for certification to the state's highest court.  Such matters should proceed in normal fashion through the state court system.").

### F.  Considerations of Judicial Economy, Convenience, and Fairness Do Not Give This Court Subject Matter Jurisdiction

Finally, the court will address Defendants' argument that the court should retain jurisdiction over this case in the interest of judicial economy, convenience, and fairness to the parties.  (*See* Doc. 479 at 26; Doc. 480 at 8–9.)  This argument does not persuade the court to reach a different result.  Although the court is sympathetic to the fact that the parties have invested considerable time and resources litigating the case in this court, a court cannot exercise subject matter jurisdiction merely because it is more convenient or efficient for the court to do so.

*See Council Tree*, 503 F.3d at 292 ("The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law.  Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority." (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003))); *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1181 (3d Cir. 1996) ("Judicial economy itself does not justify federal jurisdiction." (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984))).

### G. This Case Is Remanded to New York State Court

Under 28 U.S.C. § 1447, a district court must remand a removed case to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  In a case like this one where the case was removed to federal court and subsequently transferred to a different federal district, the court must remand the case to the state court from which the case was originally removed because "[t]he only remand contemplated by the removal statute is a remand 'to the State court from which it was removed.'" *Bloom v. Barry*, 755 F.2d 356, 358 (3d Cir. 1985) (quoting 28 U.S.C. § 1447(d)). Accordingly, this case is remanded to the New York County Supreme Court in New York, New York.

33

**CONCLUSION**

For the foregoing reasons, the court finds that it lacks subject matter jurisdiction.  This case is accordingly remanded to the New York County Supreme Court in New York, New York.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 28, 2020